# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERICA GIL,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[1]

Defendant.

_________________________________/

Case No. 2:25-cv-03349-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff Erica Gil ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. FACTUAL BACKGROUND

Plaintiff protectively filed claims for DIB and SSI payments on October 4, 2022, and

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 8.) On September 25, 2026, this case was reassigned to the undersigned. (*See* Doc. 13.)

November 3, 2022, respectively, alleging she became disabled on July 1, 2021, due to rheumatoid arthritis; inflammation in left foot; anemia; astigmatism in left eye; tumors in head; and weakness on right side of face and body. (Administrative Record ("AR") 17, 64, 82, 103, 115, 143, 147.) Plaintiff was born in 1976, was 44 years old on the alleged disability onset date, and has at least a high school education. (AR 29, 63, 81, 103, 115, 295.)

## A. Relevant Evidence of Record[3]

### 1. Medical Evidence

In June 2021, Plaintiff attended a follow-up appointment to treat rheumatoid arthritis. (AR 400–404.) She reported that her joint pain was "much better" than before. (AR 401.) No swelling was noted in her wrists, elbows, hands, knees, ankles, or feet. (AR 402.) Plaintiff reported that her right wrist was stiffer than her left. (AR 402.) Her medications were continued. (AR 402.)

Plaintiff presented for another follow-up appointment in December 2021. (AR 386–97.) She complained of worsening joint pain and swelling. (AR 386–87.) On examination, swelling was noted in Plaintiff's right hand and in her left ankle, with painful range of motion. (AR 387.) No swelling was noted in her knees, right ankle, and feet, and range of motion was normal. (AR 387.) Her medications were continued. (AR 387–88.)

In April 2022, Plaintiff complained of worsening joint pain and intermittent swelling. (AR 426–33.) Her left knee appeared swollen, with normal range of motion and no other swelling noted. (AR 427.) She was continued on her medication regimen. (AR 427–28.)

Plaintiff complained of left foot pain, intermittent right ankle pain, hand/wrist joint pain, and occasional muscle aches in June 2022. (AR 367.) On examination, Plaintiff was pleasant, well-developed, well-nourished, and in no apparent distress. (AR 368.) Her left ankle had tenderness and range of motion was normal in both ankles. (AR 368.) She was given an injection, and her pain medication was refilled. (AR 369.)

That next month, Plaintiff again complained of pain in her left foot. (AR 371–74.) She was observed to be pleasant, well-developed, well-nourished, and in no apparent distress. (AR 372.) No

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

musculoskeletal findings were present. (AR 372.) Plaintiff was referred for imaging, and her pain medication was refilled. (AR 373.)

In February 2023, Plaintiff underwent a comprehensive internal medicine evaluation by Satish Sharma, M.D. (AR 529–33.) Her chief complaints were listed as joint pain, a history of acoustic neuroma resulting limitations on her right side (including hearing), left heel pain, and anemia. (AR 529.) On examination, Dr. Sharma observed swelling of the fingers in Plaintiff's hands, with full range of motion and the ability to make a fist bilaterally. (AR 531.) Plaintiff had pain on abduction of the bilateral shoulders, and full range of motion of the hips and ankles. (AR 531.) In her knees, tenderness to palpation on pain on flexion was present. (AR 531.) Dr. Sharma noted swelling in the joints of Plaintiff's toes in both feet and tenderness to palpation of her left heel. (AR 531.) She had decreased sensation to pinprick in the right half of the face and decreased hearing to finger rub. (AR 532.) Motor strength testing showed that Plaintiff had five out of five strength in the left upper and lower extremities and four out of five strength in the right upper and lower extremities. (AR 532.)

Plaintiff presented for a follow-up appointment to treat her chronic pain in May 2023. (AR 695–98.) On examination, Plaintiff was pleasant, well-developed, well-nourished, and in no apparent distress. (AR 696.) Her results were normal, including normal neurological examination. (AR 696.) That same month, Plaintiff was noted to be asymptomatic. (AR 705.)

In June 2023, Plaintiff complained of hand and wrist swelling and pain. (AR 730.) She was observed to be in no acute distress. (AR 731.) She had limited range of motion with pain in her right shoulder, and limited range of motion in her left elbow, bilateral wrists, and left ankle. (AR 731.) Plaintiff had swelling in her bilateral wrists and hands, and tenderness was noted in her elbows, wrists, hands, left ankle, and bilateral feet. (AR 731.) Plaintiff had normal range of motion of the kneel, right ankle, hips, and feet. (AR 731.) Plaintiff's medication for rheumatoid arthritis was continued in November 2023; she reported she "noticed some improvement" but still had joint pain. (AR 713.)

**2. Opinion Evidence**

Following the consultative examination in February 2023, Dr. Sharma opined that Plaintiff

could push, pull, lift, and carry 10 pounds frequently and 20 pounds occasionally; stand/walk for two hours in an eight-hour workday; occasionally climb ramps and stairs, kneel, and crouch; frequently hold, feel, and finger with the right hand; frequently hold, and finger with the left hand; and occasionally reach overhead bilaterally. (AR 532–33.) Dr. Sharma further opined that Plaintiff had no sitting limitations and did not need any assistive device to walk. (AR 532.)

In October 2024, Frank Fine, M.D., conducted a Qualified Medical Examination of Plaintiff. (AR 847–52.) Dr. Fine opined that Plaintiff "cannot even work in a sedentary capacity." (AR 851.) He further found that Plaintiff cannot stand or sit for more than 20 to 30 minutes without a break; cannot walk over uneven ground; cannot climb stairs or ladders; cannot kneel, or squat; cannot tolerate vibration under her feet; cannot repetitively bend or stoop; cannot lift or carry more than 10 pounds; cannot perform repetitive grip, grasp, torque, or fine finger movements; cannot lift more than five pounds with both upper extremities; cannot use her arms at or above shoulder height bilaterally; and may require an assistive device. (AR 851.) Dr. Fine also completed a form titled "Residual Functional Capacity with Injury to Upper Extremity," in which he opined that Plaintiff could work for one hour per day; sit, stand, or walk for one hour each per day; drive for two hours; rarely lift less than 10 pounds and never lift 10 pounds or more; never or rarely perform postural activities; and rarely perform manipulative activities. (AR 853–58.)

**3. Plaintiff's Statements**

In December 2022, Plaintiff completed an exertional questionnaire. (AR 311–14.) She alleged that she has pain throughout her body and stiffness in her fingers. (AR 311–12.) She reported that she performed household chores and does grocery shopping daily. (AR 311.)

Plaintiff completed an adult function report in December 2023. (AR 324–31.) Plaintiff alleged that sitting for long periods causes lower back pain. (AR 324.) She reported that she cares for two children. (AR 325.) She used reminders to take medication but did not need reminders to engage in personal care. (AR 326.) Plaintiff prepared meals daily, although it takes her "a little longer than usual." (AR 326.) She shopped in stores on an as needed basis. (AR 327.) She did not have problems getting along with others but no longer attended family gatherings because of pain. (AR 328.) Although Plaintiff did not finish tasks, she did not have any difficulties with spoken or

written instructions. (AR 329.) Plaintiff alleged that her impairments limit her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use her hands. (AR 329.) She stated that she could walk for one half block before needing to stop and rest and that lifting a can of food could be hard and painful. (AR 329.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on March 29, 2023 (AR 17, 127–31), and again on reconsideration on March 19, 2024 (AR 17, 140–47). Consequently, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (AR 148–92.) At the hearing on November 14, 2024, Plaintiff appeared with her attorney and testified before an ALJ as to her work history and alleged disabling conditions. (AR 40–52.) A Vocational Expert (VE) also testified at the hearing. (AR 53–61.)

**1. Plaintiff's Testimony**

At the hearing, Plaintiff testified that she is unable to work because of rheumatoid arthritis and an on-the-job injury. (AR 42.) She has limitations in her hands, legs, knees, back, and elbows. (AR 43.) Plaintiff testified that she could sit for 30 minutes at one time; stand for five to 10 minutes; walk for a block; and lift five to 10 pounds. (AR 45.) She has constant pain throughout the day and uses an assistive device to walk twice per week. (AR 43–44, 46.) Injections reduced her pain. (AR 48–49.) Plaintiff testified that she drives, maintains her own personal appearance with some difficulty, gets her kids ready for school, cooks, mops, does the laundry, washes dishes, uses a smart phone and e-mail, shops, and attends school events. (AR 45–48.)

**2. VE's Testimony**

The VE testified that Plaintiff had past relevant work as an in-home support services provider, Dictionary of Operational Titles (DOT) code 354.377-014, with a medium exertional level and a specific vocational preparation (SVP)[4] of 3. (AR 53–54.) The ALJ then asked the VE to consider a person of Plaintiff's age, education, and work history. (AR 54.) The VE was also to

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

assume this person could perform light work with the following additional limitations: they could overhead reach with their left arm occasionally and all other reaching frequently; they could frequently handle, finger, and feel; they could occasionally climb ramps and stairs; they could occasionally balance, stoop, kneel, crouch, and crawl; they should never climb ladders and scaffolds; they should never work around unprotected heights and should avoid concentrated exposure to moving mechanical parts. (AR 55.) The VE testified that such a person could not perform Plaintiff's past work but could perform light exertional jobs in the national economy such as parking lot attendant, Dictionary of Operational Titles (DOT) code 915.473-010, with an SVP of 2; routing clerk, DOT code 222.687-022, with an SVP of 2; and price marker, DOT code 209.587-034, with an SVP of 2. (AR 55–56.)

Considering a second hypothetical, where a person would have the same limitations as the first but at the sedentary exertional level, the VE testified that such a person could perform the positions of document preparer, DOT code 249.587 018, with an SVP of 2; clerical sorter, DOT code 209.687 022, with an SVP of 3 per the DOT; and telephone solicitor, DOT code 299.357 014, with an SVP of 3 per the DOT. (AR 56–57.) According to the VE, considering a third hypothetical involving the same limitations in either the first or second hypothetical but also a limitation to lifting no more than five pounds and requirements of a two-minute off task break every 30 minutes and a ten minute off task break after standing or walking for five minutes, the VE testified that there would be no jobs available. (AR 57.) The VE further testified that an individual who had normal hearing in one ear and no hearing in the other would not be impacted with respect to the identified jobs. (AR 58.)

On questioning by Plaintiff's attorney, the VE considered a fourth hypothetical, where an individual has the same limitations as in the third hypothetical, but also is limited to occasionally handling, fingering, or feeling and cannot use arms at or above shoulder height. (AR 61.) The VE testified that the sedentary jobs would not be available, but there would be other, light jobs that could be done. (AR 61.)

**C. The ALJ's Decision**

In a decision dated December 27, 2024, the ALJ found that Plaintiff was not disabled, as

defined by the Act. (AR 17–31.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 19–31.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2028, and he had not engaged in substantial gainful activity since July 1, 2021, the alleged onset date (step one). (AR 19–20.) At step two, the ALJ found Plaintiff's following impairments to be severe: rheumatoid arthritis, osteoarthritis, and history of acoustic neuroma. (AR 20–23.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 23.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally reach overhead with the left upper extremity, frequently reach overhead with the dominant right upper extremity, and frequently reach in all other directions bilaterally. [Plaintiff] can frequently handle, finger, and feel bilaterally. [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] cannot climb ladders or scaffolds. [Plaintiff] cannot work around unprotected heights. [Plaintiff] must avoid concentrated exposure to moving mechanical parts.

(AR 23–29.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 25.)

The ALJ determined that Plaintiff had could not perform her past relevant work (step four)

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

but that, given her RFC, she could perform a significant number of jobs in the national economy, specifically parking lot attendant, routing clerk, and price marker (step five). (AR 29–31.) The ALJ concluded Plaintiff was not disabled from July 1, 2021, through the date of the decision. (AR 31.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 30, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or

'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred by improperly discounting Plaintiff's subjective symptom complaints and not considering appropriately the opinions of qualified medical examiner Dr. Fine. (*See* Doc. 10.) The Court addresses Plaintiff's contentions below and finds that reversal is not warranted.

### A. The ALJ Properly Found Plaintiff Less Than Fully Credible

#### 1. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[6] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

[6] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 12 at 4 n.1.)

> inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2. Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 25.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the Court finds that the ALJ identified at least two valid reasons for discrediting Plaintiff's symptom testimony. First, the ALJ found that it was "not entirely consistent" with the medical evidence. (AR 26.) While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch*, 400 F.3d at 680, 681. *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999). Moreover, "[w]hen objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in

original) (collecting cases); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). The ALJ here observed that despite her allegations of tenderness, swelling, and "significant pain levels," the medical evidence showed Plaintiff "generally retained a full or close to full range of motion" in her joints and was "repeatedly observed in no acute or apparent distress." (AR 26.) This observation is supported by the records cited by the ALJ. (*See* AR 368, 372, 387, 427, 531, 696, 731.) The ALJ's determination that Plaintiff's complaints are inconsistent with the medical evidence is therefore a clear and convincing reason for discounting her subjective symptom testimony. *See Smartt,* 53 F.4th at 499 (concluding that the ALJ properly discredited the claimant's testimony based on inconsistencies with objective medical evidence); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations).

Second, the ALJ found that Plaintiff's observed conduct at the hearing and her daily activities "all indicate that she is not as limited as alleged." (AR 26.) In discounting subjective-symptom testimony and statements, ALJs may rely in part on their own personal observations of claimants during hearings. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (an ALJ's personal observations may be used in "the overall evaluation of the credibility of the individual's statements") (citation omitted). In addition, a claimant's level of activity may support an ALJ's determination to give less weight to their subjective statements. When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan*, 169 F.3d at 600 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The Ninth Circuit also determined that a claimant's activities may be used to support an adverse credibility determination where the capabilities contradict the severity of the symptoms reported. *See, e.g., Valentine*, 574 F.3d at 693; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Thus, the Ninth Circuit determined a claimant's level of activity can form the basis for an ALJ to discount subjective statements where: (1) the activities contradict a claimant's testimony, or (2) the level of activity "meet[s] the threshold for transferable work skills." *Orn*, 495 F.3d at 639.

Here, the ALJ noted that despite "alleged significant ambulation difficulties," Plaintiff walked "normal and briskly into the hearing room without an assistive device." (AR 26.) The ALJ also cited Plaintiff's testimony that she was able to drive, maintain her own personal appearance, get her kids ready for school, cook, mop, do the laundry, wash dishes, use a smart phone and e-mails, shop, attends school events, and spend time on the computer. (AR 26.) The ALJ reasonably concluded that these observations and activities, which are supported by the record (*see* AR 45–48, 311, 325–27), undermined Plaintiff's allegations of debilitating impairments due to pain (AR 25–26). *See Ahearn v. Saul,* 988 F.3d 1111, 1117 (9th Cir. 2021) (the plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming ALJ's decision discounting the claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

Plaintiff "disagrees with the ALJ's assessment of her symptoms" and cites several records from the medical evidence that she contends "corroborate" her subjective complaints. (Doc. 10 at 12–15 (citing AR 367, 371, 386–87, 458–59, 532–33, 777, 833, 843–44).) But the ALJ considered this or substantially similar medical evidence in their decision, ultimately concluding that Plaintiff's allegations were "not entirely consistent" with the record as a whole. (*See* AR 21, 24, 25, 26, 28, 29 (citing AR 367, 371, 386–87, 514, 777, 833, 843–44).) Although Plaintiff's disagreement lies with the ALJ's interpretation of the medical evidence, it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 604).

In sum, the Court concludes that the ALJ provided at least two clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding her disabling pain

allegations.[7]

**B. The ALJ's Treatment of Dr. Fine's Opinions Was Not Erroneous**

**1. Legal Standard**

An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source" and "explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)); *see also* 20 C.F.R. § 416.920c(b). The Social Security Administration's regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant... objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). Consistency refers to "the extent to which a medical opinion is 'consistent...with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2).

*Woods* makes clear that to reject properly a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (quoting 20 C.F.R. § 404.1520c(b)); *see also* 20 C.F.R. § 416.920c(b).

**2. Analysis**

With these legal standards in mind, the Court reviews the ALJ's consideration of the medical opinions of qualified medical examiner Dr. Fine. Dr. Fine opined that Plaintiff cannot stand or sit

---

[7] Moreover, Plaintiff has not shown that any error in the consideration of her subjective complaints would be harmful. Despite bearing the burden of proving her disability, *see Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), Plaintiff does not specify what additional functional limitations resulting from her alleged impairments were not accounted for in the ALJ's RFC assessment or otherwise identify how the ALJ's purported error was not inconsequential to the ultimate nondisability determination. *See McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). *Cf. Ruth F., v. Comm'r of Soc. Sec.,* No. C20-5603-MAT, 2021 WL 3772067, at *5 (W.D. Wash. Aug. 25, 2021) ("[A]ny error in the ALJ's evaluation of Plaintiff's subjective testimony would be harmless because the ALJ accounted for Plaintiff's alleged exertional limitations in the RFC.").

for more than 20 to 30 minutes without a break; cannot walk over uneven ground; cannot climb stairs or ladders; cannot kneel, or squat; cannot tolerate vibration under her feet; cannot repetitively bend or stoop; cannot lift or carry more than 10 pounds; cannot perform repetitive grip, grasp, torque, or fine finger movements; cannot lift more than five pounds with both upper extremities; cannot use her arms at or above shoulder height bilaterally; and may require an assistive device. (AR 851.) He also completed a form titled "Residual Functional Capacity with Injury to Upper Extremity," in which he opined that Plaintiff could work for one hour per day; sit, stand, or walk for one hour each per day; drive for two hours; rarely lift less than 10 pounds and never lift 10 pounds or more; never or rarely perform postural activities; and rarely perform manipulative activities. (AR 853–58.)

The ALJ determined that Dr. Fine's opinions were not persuasive because they contain "inapposite findings that are not addressed by Dr. Fine," are "not consistent with other examinations of [Plaintiff] that do not contain as restrictive findings," and are "inconsistent with the medication treatment provided, the claimant's reported improvements in pain control, and observations that she was in no acute distress." (AR 29.) Regarding supportability, the ALJ reasonably determined Dr. Fine's opinions were internally inconsistent because (1) his opined sitting limitation of one hour per workday conflicted with his opinion that Plaintiff can drive for two hours (AR 853), and (2) his opinion that Plaintiff "cannot . . . lift more than 5 pounds with both upper extremities" conflicted with his later finding that Plaintiff "cannot . . . lift more than 10 pounds maximally" (AR 851). (AR 29.) Internal inconsistency in a physician's opinion is a specific and legitimate reason to find an opinion less persuasive. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that an ALJ may cite internal inconsistencies in a physician's opinion); *see also Jandrejack v. Saul*, 843 F. App'x 993, 995 (9th Cir. 2021) (internal inconsistencies can serve as a valid reason for discounting a physician's opinion); *Ocejo v. Astrue,* No. 1:10-CV-01604 GSA, 2011 WL 5554358, at *11 (E.D. Cal. Nov. 15, 2011) ("Rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion.").

As to consistency, the ALJ found Dr. Fine's opinion inconsistent with the treatment records, which showed normal examination findings, with no acute distress, and improvement with medication treatment. (AR 29.) Substantial evidence supports this finding. The medical records

cited by the ALJ document a lack of joint swelling (AR 387, 402), normal range of motion (AR 368, 387, 427, 531, 731), normal neurological findings (AR 696), asymptomatic presentation (AR 705), normal strength in her left extremities (AR 532), no acute or apparent distress (AR 368, 372, 696, 731), and a medication regimen that caused "some improvement" in her joint pain and made it "much better" (AR 401, 713). *See Morgan*, 169 F.3d at 600–601 (9th Cir. 1999) (The ALJ may accord an opinion less weight based upon substantial evidence, including "clinical evidence" that the ALJ finds to be conflicting.); *Alvarez v. Comm'r of Soc. Sec.*, No. 1:20-CV-01207-SAB, 2022 WL 3108619, at *10 (E.D. Cal. Aug. 4, 2022) ("[T]he ALJ's finding that the symptoms noted in [the physician's] opinion are not supported by the medical record for the relevant period constitutes a specific and legitimate reason to discount his opinion."). *Cf. Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [Social Security] benefits.").

Plaintiff again disagrees with the conclusion drawn by the ALJ from this evidence and asserts that Dr. Fine's opinions are "specifically supported by the report from Social Security's in-person internal medicine consultative examiner, Dr. Sharma." (Doc. 10 at 19.) But Dr. Sharma's opinion is not as restrictive as Dr. Fine's. Unlike Dr. Fine's opined ***one***-hour standing and walking limitations, Dr. Sharma limited Plaintiff to standing and walking for ***two*** hours in a workday. (*Compare* AR 532 *with* AR 853.) This distinction is important because the ALJ found that Plaintiff could perform sedentary jobs (*see* AR 30), which would necessarily incorporate the two-hour standing and walking limitations opined by Dr. Sharma. *See* TITLES II & XVI: DETERMINING CAPABILITY TO DO OTHER WORK-THE MED.-VOCATIONAL RULES OF APPENDIX 2, SSR 83-10 (S.S.A. 1983) ("Sedentary work" involves periods of standing or walking of "no more than about 2 hours of an 8-hour workday"). Thus, contrary to Plaintiff's contention, Dr. Sharma's opinion does not support those of Dr. Fine, and instead lends support to the ALJ's conclusion that Plaintiff is not disabled. Plaintiff may disagree with this conclusion, but as noted above, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1196; *Thomas*, 278 F.3d at 954. The Court concludes that the ALJ did not err by finding Dr. Fine's opinions unpersuasive.

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record and free from legal error and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Erica Gil.

IT IS SO ORDERED.

Dated: **October 14, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE